UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HENRY DUDLEY AVERY, JR.,

                Plaintiff,

      v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

              Defendant.

Case No. C13-125-RAJ-BAT

**REPORT AND
RECOMMENDATION**

       Henry D. Avery, Jr. seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends that the ALJ erred by (**1**) not complying with the two-step process for assessing drug addiction and alcoholism ("DAA"); (**2**) giving insufficient reasons to reject medical opinions; and (**3**) not having the vocational expert ("VE") give a reasonable explanation for contradicting the Dictionary of Occupational Titles ("DOT") concerning the need to be able to read for the jobs of table worker and small products assembler. Dkt. 18, at 1–2.  As discussed below, the although the ALJ did not commit reversible error as to issues 1 and 2, the Court recommends that the Commissioner's decision be  **REVERSED** and **REMANDED** for further administrative proceedings because the ALJ committed reversible error as issue 3.

# BACKGROUND

Mr. Avery is currently 45 years old, has completed the 11th grade, and has worked as a cook.  Tr. 46, 133, 177–84.  He reports that he cannot read but can write some.  Tr. 46.  On March 23, 2011, he applied for benefits, alleging disability as of August 1, 2010.  Tr. 137–45.  His applications were denied initially and on reconsideration.  Tr. 83–89.  The ALJ conducted a hearing on March 8, 2012, finding Mr. Avery not disabled.  Tr. 12–38.  As the Appeals Council denied Mr. Avery's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1–4.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Mr. Avery had not engaged in substantial gainful activity since August 1, 2010.

**Step two:**  Mr. Avery had the following severe impairments: chronic right shoulder pain; mood disorder, not otherwise specified; major depression and posttraumatic stress disorder ("PTSD").

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):**  Mr. Avery can perform light work, except that he cannot reach overhead more than occasionally due to his right shoulder injury. Because of mental limitations, he can concentrate and focus on simple routine tasks for two hours before requiring a break to refocus before he can resume concentration on simple tasks.  He can work in proximity to coworkers, but not in a coordinated effort.  He can perform work requiring only superficial public interaction.

**Step four:**  Mr. Avery could not perform his past work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Mr. Avery can perform, he is not disabled.

Tr. 12–38.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

## DISCUSSION

The Court will reverse the denial of a disability claim only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard.  *See Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985).  Even when the evidence is susceptible to more than one rational interpretation, the Court will uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  The Court may not reverse an ALJ's decision on account of harmless error.  *See Stout v. Comm'r, SSA*, 454 F.3d 1050, 1055–56 (9th Cir. 2006).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The Court finds: (**1**) the ALJ did not err by declining to apply the two-step process for assessing DAA because she found no disability even taking substance use into account; (**2**) the ALJ provided sufficient reasons for discounting the medical opinions of Melanie Mitchell, Psy. D., and James Czysz, Psy. D.; and (**3**) the ALJ harmfully erred because she did not acknowledge the conflict between the VE's opinion and the DOT and the VE did not adequately support the conclusion that table workers and small products assemblers need not have the ability to read. This matter should be remanded so the ALJ may hear further step 5 testimony from the VE and comply with Social Security Ruling ("SSR") 00-4p.

### 1.     DAA Evaluation

Mr. Avery contends that the ALJ erred by using evidence of his drug addiction to discredit medical opinions and Mr. Avery's testimony, rather than by proceeding with the two-step disability evaluation process for claims involving DAA—the first time through with evidence of drug addiction, and then a second time through removing drug addiction from the

1   equation.  The Court disagrees because the two-step, DAA evaluation process was never

2   triggered by a finding of disability and the ALJ's references to substance use when evaluating

3   the medical opinions and Mr. Avery's credibility were either proper or constituted harmless

4   error.  Moreover, Mr. Avery does not and has not asserted that a substance abuse disorder

5   constitutes a severe impairment or that substance use limits his functional capacity.

6          A finding of a disability is a condition precedent to an application of 42 U.S.C.

7   § 423(d)(2)(C) to consider DAA in a two-step evaluation process.  20 C.F.R. §§ 404.1535,

8   416.935; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  "[A]n ALJ should not

9   proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the

10  claimant to be disabled under the five-step inquiry."  *Bustamante*, 262 F.3d at 955.  Here, the

11  ALJ noted that Mr. Avery was not disabled with or without the use of drugs or alcohol.  Tr. 29

12  n. 5.  That is, the ALJ found that Mr. Avery had the same RFC even when using substances.  *Id.*

13         After discounting the opinions of Department of Social and Health Services ("DSHS")

14  examining physicians for a number of reasons unrelated to drug and alcohol use, the ALJ

15  provided an alternative reason to reject their opinions: the DSHS excludes any diagnosis of or

16  related to drug abuse or alcoholism in deciding disability under state law and during the time of

17  DSHS evaluations Mr. Avery was using drugs and alcohol.  Tr. 31.  To the extent the ALJ erred

18  by discounting the DSHS evaluations because they did not account for Mr. Avery's

19  contemporaneous drug and alcohol use, this error was harmless.  The ALJ had already cited valid

20  reasons for discounting the DSHS evaluations, the ALJ made reference to substance use only as

21  an alternative reason for discounting them, and regardless, the ALJ found Mr. Avery had the

22  same RFC whether or not he was using substances.

23         The ALJ mentioned Mr. Avery's history of drug use several times during her credibility

1    analysis.  Dkt. 24–27.  The ALJ did so, however, not because drug use *per se* made him

2    unreliable, but because, for example, Mr. Avery made inconsistent statements about his

3    marijuana use and his continued use of substances suggested an unwillingness to comply with a

4    treatment plan recommending cessation.  Tr. 27.  The ALJ may employ ordinary techniques of

5    credibility evaluation, such as a claimant's inconsistent statements.  *See Burch v. Barnhart*, 400

6    F.3d 676, 680 (9th Cir. 2005).  To the extent the ALJ may have improperly implied that

7    substance addiction itself rendered Mr. Avery unreliable, such an error is harmless given the

8    other valid reasons for discounting Mr. Avery's credibility.  *See* Tr. 24–27.

9            Mr. Avery faults the ALJ for addressing the impact of substance use in a footnote and

10   raises the novel argument that the ALJ erred by not specifically addressing reviewing state-

11   agency physician Guendalina Ravello, Ph.D.'s determination, on a Psychiatric Review

12   Technique Form, that Mr. Avery met Listing 12.09 for substance abuse disorders.  Tr. 350, 358,

13   360.  The ALJ's limited, explicit examination of Mr. Avery's substance use cannot be reasonably

14   considered an error.  Mr. Avery has never asserted that he suffers from a substance abuse

15   disorder and even in his current briefing does not challenge the ALJ's omission of a substance

16   abuse disorder from the list of severe impairments at step 2.  Under such circumstances, the ALJ

17   was not required to proceed with a two-step *Bustamante* evaluation and explicitly accept or

18   dismiss a reviewing physician's checkbox determination of a substance abuse disorder.

19   Regardless, the ALJ cited and considered Dr. Ravello's reports and gave them partial weight

20   based on other valid reasons such as internal inconsistencies and the record as a whole

21   suggesting fewer limitations.  Tr. 27–28.

22          The Court finds that the ALJ did not err by declining to apply the two-step process for

23   assessing DAA because she found no disability even taking substance use into account and,

REPORT AND RECOMMENDATION - 5

1    moreover, the ALJ's citation to Mr. Avery's substance use to discount medical opinions and his

2    testimony was either proper or constituted harmless error.

3          **2.    Medical Evidence**

4          The Court finds that the ALJ provided specific, legitimate reasons for discounting the

5    medical opinions of Drs. Mitchell and Czysz by setting forth a detailed and thorough summary of

6    the conflicting medical evidence, interpreting it, and making defensible findings.  Tr. 27–30; *see*

7    *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989).

8                **a.    Melanie Mitchell, Psy. D.**

9          Mr. Avery contends that the ALJ harmfully erred by discounting Dr. Mitchell's medical

10   opinion.  The Court disagrees.

11         Dr. Mitchell examined Mr. Avery for DSHS and completed a form on September 12,

12   2011.  Tr. 30, 382–87.  Dr. Mitchell assessed Mr. Avery with anxiety and depression and opined

13   that his symptoms would markedly and severely affect work activities.  The ALJ gave little

14   weight to Dr. Mitchell's opinion because she completed the evaluation during a time when Mr.

15   Avery was not taking his anti-psychotic medications and, therefore, the evaluation did not reflect

16   his actual abilities and limitations when he complied with treatment.  Tr. 30; *see* Tr. 398 (noting

17   on Sept. 17, 2011, that medications were helpful with mood and anger-related issues but that he

18   had been off medications for past 8 days and was feeling angry and depressed).  Elsewhere in the

19   record, the ALJ noted that Mr. Avery's mental impairments were generally well-controlled when

20   he was compliant with his medication.  Tr. 26; *see* Tr. 49, 309, 320–21, 333, 340–41, 346–47,

21   398.  An impairment that can be controlled effectively with medication is not disabling for Social

22   Security purposes.  *See Warre v. Comm'r of SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006).

23         The ALJ provided a specific and legitimate reason to discount Dr. Mitchell's one-time

1  assessment: it was completed at a time that did not reflect Mr. Avery's "actual abilities and

2  limitations when [he is] complying with his treatment plan and taking the prescribed

3  medications."  Tr. 30; *see Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).  Contrary to Mr.

4  Avery's suggestions, the ALJ did not chastise Mr. Avery for his failure to take his medications or

5  reject Dr. Mitchell's opinion based on Mr. Avery's non-compliance with treatment.  Rather, the

6  ALJ discounted Dr. Mitchell's medical opinion because it was contradicted by other medical

7  records that suggested Mr. Avery's condition improved when taking his medications and

8  complying with his treatment plan.  *See, e.g.*, Tr. 333 ("His wife states he is calm and can cope

9  when he is on his meds.  When he is not, no one can get along with him, he rages, and will

10  fight.").

11          **b.**     **James Czysz, Psy. D.**

12         Mr. Avery also alleges that the ALJ harmfully erred by discounting Dr. Czysz's medical

13  opinion.  The Court disagrees.

14         Dr. Czysz performed a one-time examination for DSHS and concluded that Mr. Avery

15  was not employable.  Tr. 388–91.  The ALJ gave the opinion little weight because it was largely

16  based on Mr. Avery's self-reports, and it was based in part on a diagnosis of bipolar disorder that

17  was not supported by the record.  Tr. 30, 388.

18         "An ALJ may reject a . . . physician's opinion if it is based to a large extent on a

19  claimant's self-reports that have been properly discounted as incredible."  *Tommasetti*, 533 F.3d

20  at 1041.  The ALJ provided clear and convincing reasons for discounting Mr. Avery's credibility

21  that Mr. Avery does not challenge.  *See* Tr. 24–27.  The ALJ also discounted Dr. Czysz's

22  diagnosis of bipolar disorder because it was not supported by objective clinical findings and by

23  the record as a whole.  *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004); SSR 96-

2p; 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).  For example, in a narrative psychological evaluation Dr. J. Water Jacobs, Ph.D. did not diagnose bipolar disorder and noted that "[t]he examiner was trying to elicit descriptions of a manic episode but none was forthcoming."  Tr. 346.  Moreover, Mr. Avery does not challenge the ALJ's step two finding that bipolar disorder was not a medically determinable impairment.  Tr. 18.

The ALJ provided specific and legitimate reasons to discount Dr. Czysz's assessment of Mr. Avery's lack of employability because it was based on unreliable self-reports and based in-part on an unsupported diagnosis of bipolar disorder.

### 3.    Conflict Between VE Testimony and the DOT

Mr. Avery argues that the ALJ did not adequately explain the conflict between the DOT, which provides that the jobs of table worker (DOT# 739.687-182) and small products assembler (DOT# 706.684-022) require level one reading, and the VE's testimony that such jobs—and indeed many of the jobs listed by the DOT—do not require any reading ability.  He is correct.

An ALJ is required to inquire into any conflicts between the VE's testimony and the DOT classifications, and to obtain a "reasonable explanation" for the conflict.  *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007); *see* SSR 00-4p.  Where the ALJ fails to take these steps, a reviewing court is unable to determine whether substantial evidence supports the ALJ's step five findings.  *Id.* at 1153–54 & n. 19.

As in *Massachi*, in the present matter there is "an apparent conflict" and an insufficient "basis for the [VE's] deviation."  486 F.3d at 1154 n. 19.  The ALJ found that Mr. Avery could not read and, at the hearing, asked the VE to eliminate any jobs that would require reading and comprehension.  Tr. 31, 71.  Responding to the hypothetical, the VE opined:

> I would say that the DOT, of course, requires that everybody have reading skills
> to do everything.  I don't think that's realistic or reflective of the way jobs are

1   performed in the economy.  So I would disagree with the DOT on that.

2   Tr. 71–72.  The VE testified that the hypothetical person with Mr. Avery's limitations could

3   perform the jobs of table worker and small products assembler.  Tr. 74–75.  When asked whether

4   the DOT and his testimony were consistent, the VE replied:

5           Other than my -- my comment that it -- although the DOT says everybody has to
            be able to read at a fairly decent rate, that's not really true, I don't think, in real
6           life.

7   Tr. 75.  Those two statements constitute the entirety of the VE's testimony on the conflict

8   between his opinion and the DOT classifications for table worker and small products assembler.

9   In her order, the ALJ did not refer to any conflict between the VE's testimony and the DOT

10  classifications with respect to the ability to read.  Instead, the ALJ found that "[p]ursuant to SSR

11  00-4p, I have determined that the vocational expert's testimony is consistent with the information

12  contained in the Dictionary of Occupational Titles."  Tr. 32.

13          The ALJ erred by declining to identify and resolve a conflict between the VE's testimony

14  and the DOT, and the error was harmful because the VE provided insufficient support for his

15  conclusion that neither table worker nor small parts assembler required the ability to read.  *See*

16  SSR 00-4p.  A reasonable explanation for deviating from the DOT could include, for example,

17  "[i]nformation . . . available in other reliable publications, information obtained directly from

18  employers, or from a VE's or VS's experience in job placement or career counseling."  SSR 00-

19  4p.  Here, the VE's explanations were conclusory and involved guesswork about the nature of

20  the specified occupations.  Such speculative explanations are insufficient to reconcile the

21  conflict.  *See, e.g.*, *Tommasetti*, 533 F.3d at 1042 (holding that "brief and indefinite testimony" is

22  not "persuasive evidence" explaining a conflict).

23          The Commissioner argues that the DOT contains an inherent inconsistency in that

1   reading levels do not go below level one even though the Medical-Vocational Guidelines, which

2   are based on the DOT, recognize that not all jobs require reading.  Dkt. 21, at 11–12.  The Court

3   rejects this argument because neither the ALJ nor the VE cited this reason to discount the

4   presumptive validity of DOT information regarding the jobs in-question.  *See Massachi*, 486

5   F.3d at 1152–54; SSR 00-4p.  The Court may not affirm the agency's decision on a ground that

6   the agency itself did not invoke in making its decision.  *SEC v. Chenery Corp.*, 332 U.S. 194,

7   196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

8        The Court finds that the ALJ's violation of SSR 00-4p constituted harmful error, and that

9   this matter should be remanded so the ALJ may hear further step 5 testimony from the VE and

10  comply with SSR 00-4p.

**CONCLUSION**

12       For the foregoing reasons, the Court recommends that the Commissioner's decision be

13  **AFFIRMED** as to issues 1 and 2, **REVERSED** as to issue 3, and **REMANDED** for further

14  administrative proceedings pursuant to sentence four.

15       On remand, the ALJ should hear further step 5 testimony from the VE and comply with

16  SSR 00-4p.

17       A proposed order accompanies this Report and Recommendation.  Objections, if any, to

18  this Report and Recommendation must be filed and served no later than **October 21, 2013.**  If no

19  objections are filed, the matter will be ready for the Court's consideration on **October 25, 2013**.

20  If objections are filed, any response is due within 14 days after being served with the objections.

21  A party filing an objection must note the matter for the Court's consideration 14 days from the

22  date the objection is filed and served.  Objections and responses shall not exceed twelve pages.

23  ///

REPORT AND RECOMMENDATION - 10

1 The failure to timely object may affect the right to appeal.

2   DATED this 7th day of October, 2013.

3

4             _____

5             BRIAN A. TSUCHIDA
              United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 11